```
 1  Trinette S. Sachrison (Arizona State Bar # 025232)
    KAYE, ROSE & PARTNERS, LLP
 2  402 West Broadway, Suite 1300
    San Diego, CA 92101-3542
 3  Tel:  (619) 232-6555
    Fax:  (619) 232-6577
 4
    Bradley M. Rose (CA State Bar #126281 Admitted Pro Hac Vice)
 5  KAYE, ROSE & PARTNERS, LLP
    1801 Century Park East, Suite 1500
 6  Los Angeles, CA 90067
    Tel: (310) 277-1200
 7  Fax: (310) 277-1220

 8  Attorneys for Plaintiffs
    LOREN R. SHIRK and JENNIFER ROSE
 9
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Loren R. Shirk and Jennifer Rose, individually and as husband and wife,<br><br>           Plaintiffs,<br><br>    v.<br><br>United States of America, on behalf of its Agency, Department of Interior, Bureau of Indian Affairs,<br><br>           Defendants.<br>_____ | **Case No.:  09 CV 1786 PHX NVW**<br><br>**PLAINTIFFS' SUR REPLY TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS**<br><br>[ORAL ARGUMENT REQUESTED] |

Plaintiffs Loren Shirk and Jennifer Rose submit the following Sur Reply in opposition to Defendant United States of America's Motion to Dismiss.

<u>MEMORANDUM</u>

**A.  Both Officers, Sergeant Hilario Tankeyowma and Detective Michael Lancaster, were federally commissioned law enforcement officers at the time of the incident.**

Officer Hilario Tankeyowma was first employed with the Gila River Indian Community (GRIC) in 1996 when the GRIC police department was administered by the Bureau of Indian Affairs (BIA).  *See* Declaration of Bradley Rose in support of Plaintiffs' Response to MTD ("Rose Decl."), Exhibit C, Deposition of Hilario Tanakeyoma, Page 13, Line 4.

**Exhibit "A"**

1  He was required by the BIA to sit for the Special Law Enforcement Commission (SLEC)
2  course for the first time in 1996.  Exhibit C, Tanakeyoma Depo., 13:10.  In 2001, after the
3  GRIC obtained its 638 Contract, Tanakeyowma sat for the SLEC course as required by the BIA
4  and obtained his SLEC commission card.  *Id.*, 14:18-25; 15:1-13.  He still maintains his
5  commission from 2001, as it does not expire.  *Id.*, 15:25- 16:1.  He sat a third time for the SLEC
6  in 2007, pursuant to the recently enacted Deputation Agreement, but that was after the incident.

7  Officer Michael Lancaster was first employed with the GRIC in 2001.  Exhibit D, Rose
8  Decl., Deposition of Michael Lancaster, Page 8, Line 12.  He attended the Special Law
9  Enforcement Training course four times throughout his tenure.  Exhibit D, Lancaster Depo.,
10 8:24-25.  He never received an SLEC card until the last session in 2007, after the subject
11 incident, having been told he needed to fill out an application.  *Id*. 12:10-12; 12:24-25; 13:1-2;
12 15:17-21.  The BIA supplied him with the forms.  *Id.*, 14:25; 15:1-5.  Officer Lancaster testified
13 in deposition he did not know why SLEC cards were being furnished for the first time.  *Id.*,
14 16:6-13.  Officer Lancaster was unaware of the August 2006 Deputation Agreement between
15 the BIA and GRIC, had never seen the agreement, nor did he know the legal effect of the
16 agreement (that authorized the issuance of SLEC cards to GRIC law enforcement officers after
17 their applications were submitted and approved).  *Id.*, 20:11-18.  In November of 2005 through
18 February of 2006, he attended the Federal Law Enforcement Training Center in Glynco,
19 Georgia, as was required by the 638 Contract and completed the Criminal Investigations
20 Training Program.  *Id.*, 9:22-25; 10:1-6.  Upon completion of his course work, Detective
21 Lancaster was commissioned by the BIA Office of Justice Services as a Special Agent Criminal
22 Investigator (Series 1811).  *Id.*, 27:1-28:20.  For purposes of this motion, an 1811 commission is
23 more than "merely a civil service job series classification for a 'Criminal Investigator'
24 established the Office of Personnel Management (OPM)."  In this instance, it connotes a
25 Federal Law Enforcement Officer with the Office of Justice Services.  *See* www.olesem.doi.gov
26 /jobs/fields/biaspecialagent.html.[1]

---

[1] While Plaintiffs strenuously assert the two Officers were federal employees for purposes of the Federal Tort Claims Act ("FTCA"), in that they were carrying out the terms of

**B. Officers Tanakeyowma and Lancaster were carrying out the terms of the Compact in fulfilling their mandatory federal terrorism training.**

On the morning of October 19, 2006, Detective Lancaster traveled to the home of Officer Tanakeyowma in Chandler, Arizona, from where the two car-pooled in the police cruiser of Officer Tanakeyowma to Tucson, to attend a continuing education course on Terrorism. Exhibit C, Tanakeyoma Depo., 33:1-4. The terrorism training course was sponsored by the United States Secret Service and conducted by Rincon Research Corporation, a contractor of the United States Department of Defense. Exhibit C, Tanakeyoma Depo., 35:1-7; Exhibit D, Lancaster Depo., 33-15-23. The Officers were authorized to attend the program by their Chief of Police to fulfill their mandatory continuing education requirement under the Compact. Exhibit D, Lancaster Depo., 34:1-10; 36:17- 23.[2]

At approximately 5:00 p.m., the two federal Officers were returning home from their training course when they encountered Leshedrick Sanford's vehicle. The two Officers were still "on the clock" and in the course and scope of their employment fulfilling their mandatory educational requirements. *See* Maricopa County Superior Court Minute Entry, dated 9/24/08, attached to the United States' MTD as Exhibit C ("Defendants were at all pertinent times on duty and being paid in their capacities as GRIC police officers. Moreover, they were returning to the tribal community, in their official GRIC vehicle, after conducting mandatory AZ POST training class for the benefit of the GRIC"). As they pulled behind Sanford's vehicle, Officer Tanakeyowma instructed Detective Lancaster to get out of the car and approach the driver of the speeding vehicle. Exhibit D, Lancaster Depo., 51:2-6. Incidental to this action, Sanford punched the gas and proceeded through the intersection resulting in the subject accident.

---

the Compact at the time of the incident, they were also federally commissioned officers.

[2] Plaintiffs are informed and believe the terrorism program was approved due to the GRIC's close proximity to the Mexican border, and the smuggling of drugs and human beings across the international border. Exhibit D, Lancaster Depo., 34:14-18; 35:4-10. GRIC Law Enforcement Officers routinely enforce United States drug and human trafficking laws, sometime in conjunction with the Federal Bureau of Investigation, and assist in the prosecution of federal charges against the perpetrators in the United States District Court. *Id*., 35:11-25; 36:1-16.

Federal courts have routinely recognized tribal employees performing official functions under the ISDEAA contract are generally treated as federal employees. *Cabazon Band of Mission Indians v. Smith*, 388 F.3d 691, 695-96 (9th Cir.2004). ("While exercising any BIA law enforcement responsibility commissioned tribal police officers are treated as federal employees). This is so regardless of whether the officer is enforcing a tribal, state, or federal law, so long as he is engaged in the performance of his official duties rather than "a personal frolic of his own." *U.S. v. Schrader,* 10 F.3d 1345, 1351 (1993); *see also Andrade v. United States*, 2008 WL 4183011 (D. Ariz) ("For purposes of the FTCA, an 'employee of the Government' includes 'persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation'").

**C.   The BIA's requirement under the 638 Contract that GRIC law enforcement officers be AZ POST certified implicitly brings the enforcement of state law within the ambit of the Compact.**

There is no dispute the BIA requires its commissioned law enforcement officers to be commissioned as Arizona Peace Officers. As established herein, both Officers, Officers Tanakeyowma and Lancaster, were commissioned federal officers and were AZ POST certified. Exhibit C, Tanakeyoma Depo., 31:12-17; Exhibit D, Lancaster Depo., 10:10-11. The BIA's authority to require federal tribal police to be POST certified as of October 19, 2006, is exclusively found in the 638 Contract between the BIA and GRIC.

As discussed below, the Deputation Agreement is irrelevant to these proceedings as neither Officer was "deputized" under the Agreement at the time of the incident. The 638 Contract requires all tribal officers to be properly licenced. Exhibit E, Rose Decl., 638 Contract, Section 102. In carrying out the purposes of the 638 Contract, which would include GRIC officers becoming AZ POST certified, the GRIC does so on behalf of the BIA. The 638 Contract between the BIA and the GRIC specifically states at Page 15, Section C, entitled "Statement of Work," Section 1, "Scope of Bureau Programs to be Performed":

///

///

> 1. <u>Purpose</u>. To state the terms and conditions, work to be performed under the contract, rights and responsibilities of each of the parties, and to enable the Contractor to acquire and utilize all resources made available by the [BIA] for the delivery of services and programs specified herein, pursuant to the Public Law 93-638, as amended, and other applicable Federal laws.
> (a) The Contractor shall obtain from the BIA all such funds and other resources made available for the benefit of the tribe for all programs to be operated and services to be delivered by the Contractor through this Contract **on behalf of the BIA**, except for trust and inherent Federal functions of the BIA which are considered non-contractible.

*Id.* at Section 1, Section 1(a). (Emphasis added).

The 638 Contract also appends, as Attachment 1, the GRIC Law Enforcement Program, "Programs and Functions." Section 102, *et seq.* of Attachment 1 sets forth the statement of work to be carried out by GRIC law enforcement officers. *See* Exhibit E, Rose Decl., 638 Contract, Attachment 1, entitled "Law Enforcement Program." Specifically, Section 102, entitled "Statement of Work" requires: "The Contractor shall provide all necessary qualified and licensed personnel, equipment, materials and services to perform all tribal law enforcement and detention services in the Gila River Indian Reservation...." Section 102.1 further provides: "<u>*Services shall be provided in accordance with defined authority, procedures and guidelines contained in*</u> the Gila River Tribal Law and Order Code, the Gila River Tribal Constitution, 25 CFR, 40 IAM, <u>*court decisions and other applicable rules, regulations and ordinances and statutes*</u>." *Id*. (Emphasis added).

Section 102.1 is a **general grant of authority** to provide police services as is legally permitted by statute and arguably at the same level as any other non-Indian law enforcement agency. The Arizona statute under which the federal officers are commissioned as peace officers of the State is found at A.R.S. §13-3875 (B). It provides:

> A federal peace officer who is employed by an agency of the United States and who has completed the basic training curriculum for the officer's agency shall possess and exercise all law enforcement powers of peace officers in this state for one year, including, if directed by the officer's employer, the capability to enforce the criminal laws of this state...

At the time of the incident, the two federal officers - returning home from their federal sponsored training program - were acting pursuant to the statutory authority granted to them under the 638 Contract and their AZ POST certification. The 638 Contract required them to be AZ POST certified and their AZ POST commission permitted them to effectuate a traffic stop

and detain the suspect until proper authorities arrived. As tribal law enforcement officers, they would have no authority to stop and detain a non-Indian off the reservation. *See generally Oliphant v. Suquamish Indian Tribe et al*, 435 U.S. 191 (1978). As such, in performing the traffic stop at issue, they were carrying out the terms of their Contract with the BIA, and on behalf of the BIA, as specially commissioned federal officers. In short, Plaintiffs' contend the broad language of the ISDEAA provides GRIC police officers with the authority to enforce state law off the reservation.

Alternatively, federal law also permits tribal officers to enforce state law off the reservation. The most instructive case on this issue is *Allender v. Scott*, 379 F. Supp. 2d. 1206 (D.N.M. 2005), in which the Court addressed whether a tribal officer is permitted to enforce state law outside the reservation's boundaries. In *Allender*, a Ramah Navajo Chapter police officer stopped a vehicle on New Mexico State Highway 53, off the reservation, and began to issue a state citation to a non-Native American. *Id*., at 1209. The tribal officer was also commissioned as a deputy sheriff of Cibola Country. His job description required that he enforce federal, state, local and tribal laws within the Ramah Navaho Community. When the driver became uncooperative, the tribal officer incarcerated the driver at the Ramah Navajo Police Station. *Id*. The driver brought suit alleging various causes of action under the FTCA. The United States denied liability for FTCA purposes, arguing that neither federal law nor the ISDEAA contract authorized the officer to enforce state law. Specifically, the United States argued that a Tribe who enters into arrangements to have its employees enforce state law is not acting under the ISDEAA but in its capacity as a sovereign government. *Id*. at 1211-1212. The Court posited the proper question as "not whether federal law directly authorizes federal agencies to enforce state law but whether federal law allows them to enter into consensual arrangements to enforce state law." *Id*., at 1212.

The Court sought guidance from the Indian Law Enforcement Reform Act (ILERA), 25 U.S.C. § 201, *et seq.,* the federal statute that authorizes law enforcement in Indian country. Hon. Bruce D. Black noted that while the ILERA does not expressly authorize federal employees to enforce state law, it does permit them to assist with the enforcement of state law

"when requested." 25 U.S.C. § 2803(8).  The Court performed an extensive statutory interpretation of the purpose of the ILERA and the statutory language "when requested" and "to assist."  The Court determined cross commissioning and agreements to enforce state law would seem to fit well within the ordinary meaning of these words.  *Id.*, at 1214-1215.

Officer Tankeyowma and Detective Lancaster's AZ POST certifications are the type of commissions the *Allender* Court opined give rise to tribal officers' authority to act in the enforcement of state law outside the boundaries of Indian territory. The Court further noted the BIA Law Enforcement Handbook, with which the GRIC must comply pursuant to 25 C.F.R. § 12.14, states "after discussing why cooperation with state law enforcement is needed, the Handbook provides that to facilitate this cooperative action, officers hold joint commissions as deputy sheriffs or are certified as State peace officers whenever possible." *Id.*, at 1214.  In support of the terms of the 638 Contract, federal law also supports the actions of Officers Tanakeyowma and Lancaster in the enforcement of state law outside GRIC boundaries.

**D.    The Deputation Agreement is immaterial to this matter as it requires an application, approval and notice before GRIC Officers are awarded SLEC cards governed by that Agreement, none of which was done prior to the incident.**

The GRIC Law Enforcement Department was a BIA administered department in 1996-1998.  Exhibit C, Rose Decl., Tanakeyowma Depo., 27:2-29:12.  In 1998, the BIA sought to delegate its law enforcement responsibilities to the Tribe through the 638 Contract. *Id.*  The GRIC law enforcement officers that were assigned to the BIA Law Enforcement Services (such as Officer Tanakeyowma who received his non-expiring SLEC card in 2001) retained their respective positions and were integrated into the new organization. *See* Exhibit E, Rose Decl., 638 Contract, Attachment 2, entitled "Schedule of Key Personnel"("The tribal personnel currently assigned to the BIA's Law Enforcement Services will be an integral part of the Tribal management and operation of Law Enforcement.  They will retain their respective positions and be integrated into the new organization").  As noted above, Section C of the 638 Contract, entitled "Statement of Work", and Attachment 1, entitled "Statement of Work", both provided a grant of general authority to the GRIC to perform police services on behalf of the BIA and in accordance with "40 IAM, court decisions and other applicable rules, regulations, ordinances

and statutes."

     In August of 2006, the BIA signed a Deputation Agreement with the GRIC to govern the BIA Office of Law Enforcement Services and Security's issuance of SLECs. *See* USA's Reply In Support of Motion to Dismiss, Exhibit A thereto. The Deputation Agreement was not entered into pursuant to the Compact, and did not alter the terms of the 638 Contract. *See* USA Reply, Exhibit A, Deputation Agreement, Section 1, entitled "Purpose" ("This Agreement is not entered into pursuant to the [ISDEAA], as amended"). For a GRIC tribal officer to receive an SLEC commission under the Deputation Agreement, the officer must submit an application and meet the criteria set forth in 25 C.F.R. Part 12, in addition to certain BIA requirements. *Id.*, Section 2, entitled "Commissions." Once the SLEC is issued pursuant to the Deputation Agreement, notice is given to the appropriate governmental agencies. According to documents produced by the United States in written discovery, both Officers Tanakeyowma and Lancaster applied for SLEC cards pursuant to the Deputation Agreement on December 6, 2006, approximately two (2) months after the subject incident. *See* Supplemental Declaration of Bradley M. Rose in Support of Plaintiffs' Sur Reply, Exhibit 1. After the BIA conducted all necessary vetting, Officer Tanakeyowma's SLEC card was issued on October 24, 2007, and Detective Lancaster's card was issued on November 13, 2007, approximately one year later. *Id*. Consequently, it is clear that Officers Tanakeyowma and Lancaster did not receive their SLEC cards pursuant to the subject Deputation Agreement, and therefore, its terms do not apply to the instant motion.

     Even if the Deputation Agreement was applicable, it would not support the Defendant's Motion to Dismiss. The Deputation Agreement recites the policy reasons stated by the Secretary of the Interior, enunciated in the Federal Register (Vol. 69), **for the uniform enforcement of federal law on Indian Lands**. *See* 69 Fed. Reg. 6321-22, effective February 10, 2004. The Officers here were not performing law enforcement functions as outlined in the Deputation Agreement but were carrying out their official duties under the 638 Contract, fulfilling their mandatory education requirements as AZ POST

///

1 certified officers. Therefore, the limitations on invoking state law and immunity from liability found in the Deputation Agreement are not applicable. *See Snyder v Navajo Nation*, 382 F.3d 892, 896-97 (9th Cir. 2004).

Respectfully submitted this 5th day of July, 2010.                **KAYE, ROSE & PARTNERS, LLP**

By:    */s Trinette S. Sachrison*
Trinette S. Sachrison, Esq.
Bradley M. Rose, Esq.
402 West Broadway, Suite 1300
San Diego, California 92101
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2010, a copy of the forgoing was sent:

**1. By electronic transmission (CM/ECF).** Pursuant to the Electronic Case Filing Administrative Policy and Procedures Manual, the parties set forth below, who are all registered users of the CM/ECF system, were each served, concurrently with the filing of the forgoing, via the Court's CM/ECF system.

Parties served via the CM/ECF procedure:

Mike Johns, Assistant United States Attorney, District of Arizona
Two Renaissance Square
40 North Center Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone No.: 602-514-7500
Facsimile No.: 602-514-7760
Email: Mike.Johns@usdoj.gov
*Attorney for Defendant*

**2. By mail.** A copy of the forgoing was sent to the Parties listed below via First Class Mail:

Mike Johns, Assistant United States Attorney, District of Arizona
Two Renaissance Square
40 North Center Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone No.: 602-514-7500
Facsimile No.: 602-514-7760
Email: Mike.Johns@usdoj.gov
*Attorney for Defendant*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed on this 5th day of July 2010, in San Diego, California.

   */s Laura Blake*
Laura Blake