**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Loren R. Shirk and Jennifer Rose, individually and as husband and wife,<br><br>            Plaintiffs,<br><br>vs.<br><br>United States of America, on behalf of Department of Interior, Bureau of Indian Affairs,<br><br>            Defendant. | No. CV-09-01786-PHX-NVW<br><br>**ORDER** |

      Plaintiffs Loren Shirk and Jennifer Rose seek damages from Defendant United States of America under the Federal Tort Claims Act ("FTCA") for the allegedly negligent actions of two Gila River Indian Community ("GRIC") police officers. Now before the Court is the United States' Motion to Dismiss (Doc. 19) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**I.    Legal Standard**

      "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, federal jurisdiction is presumed not to exist unless it is affirmatively shown. *Id.* Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, an action may be challenged for lack of subject matter jurisdiction in fact. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

In evaluating such a motion, the court is not limited to the pleadings and may properly consider extrinsic evidence and resolve factual disputes relevant to jurisdiction. *Id.*; *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

**II.     Facts**

    **A.     Background**

The issues presented by the United States' motion to dismiss require some background discussion. The GRIC is a federally recognized Indian tribe located in Sacaton, Arizona. In 1975, Congress enacted the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, 88 Stat. 2203 (1975) (codified at 25 U.S.C. §§ 450-450n). Title I permits the Secretary of the Interior, and therefore the BIA, to enter into self-determination contracts with tribal organizations in which the tribal organizations agree to administer federally funded services that would otherwise be provided by the BIA. *See* 25 U.S.C. §§ 450b(j), 450f(a)(1); *see also Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005). These self-determination contracts, also known as 638 contracts, generally have a maximum term of three years. 25 U.S.C. § 450j(c)(1)(A). Once a contract has been operated for a continuous period of at least three years, it achieves "mature" status. *Id.* § 450b(h). At that point, the tribal organization is eligible to provide the services identified in the contract for an indefinite period of time. *Id.* § 450j(c)(1)(B).

Congress followed the ISDEAA with the Tribal Self-Governance Act of 1994, Pub. L. No. 103-413, Title II, 108 Stat. 4270 (1994) (codified at 25 U.S.C. §§ 458aa-458hh). The goal of the Tribal Self-Governance Act is to transfer control over programs, services, functions, and activities traditionally provided by the Department of the Interior to participating tribes in an effort to promote tribal self-governance. *See* 25 U.S.C. § 458aa Note. The Act furthers that goal by authorizing the Secretary of the Interior to negotiate annual funding agreements with participating tribes. *Id.* § 458cc(a). The agreements permit tribes to plan, conduct, consolidate, redesign, administer and reallocate funds among programs, services, functions, and activities traditionally administered by

the Department of the Interior. *Id.* § 458cc(b). They are typically negotiated in what are known as self-governance compacts.

In 1998, the BIA entered into a three-year self-determination contract ("Contract") with the GRIC in which the GRIC agreed to provide its own law enforcement services through the administration of a federally funded Law Enforcement Program. According to subsection (a)(2) of the Contract, the purpose of the Program is "to provide Law Enforcement Services for the Gila River Indian Community" through provision of funds "necessary to carry out uniform police activities, detention services, radio communications, and criminal investigations." In subsection (b)(3), the GRIC agreed " to administer the program, services, functions and activities . . . listed in subsection (a)(2) . . . in accordance with the attached Statement of Work." Section 102 of the attached Statement of Work states:

> The [GRIC] shall provide all necessary qualified and licensed personnel, equipment, materials and services to perform all tribal law enforcement and detention services on the Gila River Indian Reservation, including the investigation of applicable Federal violations (major crimes).

The Statement of Work further provides, in relevant part:

> 102.2   The Contractor shall obtain all necessary licenses, permits, and approvals required by local, State and Federal statutes to perform under this contract.
>
> 102.3 The [GRIC] shall be responsible for the investigation of all offenses enumerated in the Tribal Law and Order Code, United States Codes or 25 CFR as applicable.
>
> 102.4 In addition to Section 102.3 of this Contract, the [GRIC] shall assist the BIA, other Federal and [S]tate Law enforcement officials in the investigation of State or Federal offenses *that occur on the Reservation*.
>
> 102.5 **Uniform Police**.   The Uniform Police Program provides police protection and enforcement of *Federal laws and laws of the Gila River Indian Community*. This enforcement is to assure the health, safety, and welfare of the community, its visitors, and all personal and real property. The [GRIC] shall be responsible for the following patrol and protective services *on the Reservation*:
>    . . . .
>
>    B. Enforcement of all Tribal criminal and traffic laws, United States Codes or 25 CFR as applicable, including all tribal ordinances.
>    . . . .

- 3 -

> G. Patrol services on and off roadways and in the communities within the boundaries of the Reservation.
>
> 102.8 **Criminal Investigations**.  The Criminal Investigation Program has primary investigative responsibilities for *crimes committed on, or involving, the Gila River Indian Community*.  This includes major federal crimes and state crimes assimilated into the Federal statutes under Title 18 U.S.C. 1153, including but not limited to, murder, manslaughter, child sexual abuse, kidnapping, rape, assault, arson, burglary, robbery, counterfeiting, embezzlement, and organized criminal enterprises . . . within the community.

(emphases added).

Later, in 2003, the GRIC entered into a self-governance compact ("Compact") with the BIA.  The Compact authorizes the GRIC to administer any programs previously administered under the authority of the ISDEAA as well as any new programs identified in the annual funding agreement ("AFA") attached to and incorporated into the Compact by reference.  The AFA refers to the GRIC Law Enforcement Program established in the 1998 Contract, including the Uniform Police and Criminal Investigations components of the program.  Article V of the Compact states, in pertinent part:

> **Section 3 – Federal Tort Claims Act coverage; Insurance.**
>
> (a) The Community is deemed by the Act to be covered under the Federal Tort Claims Act ("FTCA"), while performing programs, services, functions and activities under this Compact and any funding agreement incorporated herein.
>
> . . . .
>
> (c) Funds provided under a funding agreement may be used to purchase such additional liability and other insurance as is prudent in the judgment of the Community for its protection and the protection of its employees.

**B.    Events Giving Rise to Plaintiffs' Claims**

On October 19, 2006, at approximately 5:00 p.m., Detective Michael Lancaster and Sergeant Hilario Tanakeyowma, two GRIC police officers, were traveling northbound on State Route 587 in a GRIC Police Department vehicle.  They had attended a mandatory police terrorism training class in Tucson, Arizona, and were returning to Sergeant Tanakeyowma's residence in Chandler, Arizona.  At the time, both officers were Arizona Peace Officer Standards Training ("AZ POST") certified.  In addition, Sergeant Tanakeyowma was carrying a Special Law Enforcement Commission from the BIA.

1    As the officers were approaching the intersection of Chandler Heights Road and
2 State Route 87/Arizona Avenue, outside the boundaries of the Gila River Indian
3 Reservation, they observed a white compact vehicle driving erratically.  The driver of the
4 vehicle was later determined to be Leshedrick Sanford, a paroled felon.  The officers
5 activated their emergency lights and siren and began to pursue Sanford. When Sanford
6 came to a stop first in line at a red light at the intersection of Ocotillo road and State
7 Route 87/Arizona Avenue, the officers pulled up behind him.  As Detective Lancaster
8 exited the police vehicle to "make contact" with Sanford, Sanford accelerated and drove
9 through the red light into the intersection, where he collided with Plaintiff Loren Shirk,
10 who was traveling eastbound on Ocotillo Road on a motorcycle.

11    Sanford, who was under the influence of alcohol, immediately fled the scene on
12 foot but was apprehended and arrested by the two officers shortly thereafter.  He
13 subsequently pled guilty to one count of aggravated assault with prior felony convictions
14 and one count of leaving the scene of a serious injury accident, both in violation of
15 Arizona law, and was sentenced to 18 years in prison.

16    Shirk, who was thrown from his motorcycle, sustained serious physical injuries as
17 a result of the collision.  He initially sued Detective Lancaster, Sergeant Tanakeyowma,
18 and the City of Chandler for damages in the Maricopa County Superior Court, but the
19 court dismissed the case as to the officers on grounds of sovereign immunity and as to the
20 City of Chandler under A.R.S. § 13-3874(B), which immunizes the state and its political
21 subdivisions from liability for the acts of tribal police officers appointed by the BIA or
22 the governing body of an Indian tribe.  Shirk and his wife, Jennifer Rose, now seek
23 damages from the United States under the FTCA.

24 **IV.    Analysis**

25    Under well-established principles of sovereign immunity, the United States is
26 immune from suit except to the extent it consents to be sued.  *United States v. Dalm*, 494
27 U.S. 596, 608 (1990).  The FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, provides for a
28 limited waiver of the United States' immunity "in a defined category of cases involving

negligence committed by federal employees in the course of their employment." *Alvarado v. Table Mt. Rancheria*, 509 F.3d 1008, 1018-19 (9th Cir. 2007) (quoting *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006) (internal quotes omitted)); *see* 28 U.S.C. § 1346(b)(1). For purposes of the waiver, federal employees include "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity." *Id.* § 2671.

Here, Plaintiffs have sued the United States under the FTCA for the alleged negligence of Officers Lancaster and Tanakeyowma. The existence of jurisdiction therefore turns on whether Officers Lancaster and Tanakeyowma, employees of the GRIC Police Department, qualify as "federal employees" acting "in the course of their employment" for purposes of the FTCA.

### A.    GRIC's Contract/Compact with the BIA

As explained above, the GRIC was under contract with the BIA for the provision of law enforcement services at the time of the accident underlying Plaintiffs' claims. In Pub. L. No. 101-512, Title III, § 314, 104 Stat. 1915, 1959 (1990) (codified at 25 U.S.C. § 450f Note), Congress extended FTCA coverage as follows:

> With respect to claims resulting from the performance of functions . . . under a contract, grant agreement, or any other agreement or compact authorized by the Indian Self-Determination and Education Assistance Act of 1975 . . . , an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior . . . while carrying out any such contract or agreement and its employees are deemed employees of the Bureau . . . while acting within the scope of their employment in carrying out the contract or agreement . . . .

Federal regulations further explain that while clauses in self-determination contracts and self-governance compacts regarding FTCA coverage are not required, the following is an optional clause that may be used to clarify the scope of FTCA coverage:

> For purposes of Federal Tort Claims Act coverage, the contractor and its employees . . . are deemed to be employees of the Federal government while performing work under this contract. This status is not changed by the source of the funds used by the Tribe/Consortium to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor.

25 C.F.R. § 900.186 (self-determination contracts).

- 6 -

> For purposes of Federal Tort Claims Act coverage, the Tribe/Consortium and its employees . . . are deemed to be employees of the Federal government while performing work under this AFA. This status is not changed by the source of the funds used by the Tribe/Consortium to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the Tribe/Consortium.

25 C.F.R. § 1000.275 (self-governance compacts). Pursuant to the above provisions, tribal employees are deemed federal employees for purposes of the FTCA to the extent they act within the scope of their employment, as defined by an ISDEAA contract. *Snyder v. Navajo Nation*, 382 F.3d 892, 896-97 (9th Cir. 2004).

In this case, it is unmistakably clear from the language of the GRIC's Contract with the BIA, as incorporated into the Compact, that the BIA contemplated the execution of GRIC law enforcement functions solely within the boundaries of the Gila River Indian Reservation. Section 102 of the Contract's Statement of Work charges the GRIC with providing all necessary means "to perform all tribal law enforcement and detention services *on the Gila River Indian Reservation* . . . ." (emphasis added). Section 102.4 further requires the GRIC to "assist the BIA, other Federal and State Law enforcement officials in the investigation of State or Federal offenses *that occur on the Reservation*." (emphasis added). Section 102.5 similarly limits required patrol and protective services to within the Reservation. Finally, section 102.8 provides that criminal investigators have "primary investigative responsibilities for *crimes committed on, or involving, the Gila River Indian Community*." (emphasis added).

Furthermore, aside from section 102.4, which merely requires the GRIC to *assist* federal and state law enforcement officials in the investigation of federal and state offenses that occur on the Reservation, the Contract contemplates only the enforcement of federal and tribal law. As mentioned above, section 102 of the Statement of Work generally requires the GRIC to provide the means necessary to enforce tribal law and investigate those federal violations that qualify as major crimes. Section 102.3 further provides that the GRIC is "responsible for the investigation of all offenses enumerated in the Tribal Law and Order Code, United States Codes or 25 CFR as applicable."

- 7 -

Similarly, section 102.5 provides only for "police protection and enforcement of Federal laws and laws of the Gila River Indian Community." Lastly, section 102.8 requires investigation of "major federal crimes and state crimes assimilated into the Federal statutes under Title 18 U.S.C. 1153 . . . ."

Here, it is undisputed that Officers Lancaster and Tanakeyowma were outside the boundaries of the Reservation when they attempted to make contact with Sanford in his vehicle. That alone is enough to place the officers' conduct outside the scope of the Contract. Even if that were not enough, the officers were not attempting to enforce either federal or tribal law, the only law contemplated by the Contract. Plaintiffs argue that the officers could have been attempting to enforce 18 U.S.C. § 13, but the language of that statute clearly defeats the argument. 18 U.S.C. § 13(a) criminalizes conduct within federal jurisdiction that would be punishable under state law if committed within state jurisdiction. Furthermore, subsection 13(b)(1) merely distinguishes between state and federal punishment for operating a motor vehicle under the influence of drugs or alcohol, providing that any limitations on the right to operate a motor vehicle imposed under 18 U.S.C. § 13 "shall apply only to the special maritime and territorial jurisdiction of the United States." Plaintiffs have presented no persuasive evidence that State Route 87/Arizona Avenue, the location at which Sanford was apprehended, is within the territorial jurisdiction of the United States. Because Sanford was within Arizona's jurisdiction, only Arizona's driving laws applied to him.

Plaintiffs also argue that because an AZ POST certification authorizes an officer to enforce Arizona law, and because the Contract requires all GRIC criminal investigators to be "certified Peace Officers," Officers Lancaster and Tanakeyowma were acting pursuant to the Contract by pursuing Sanford for a violation of Arizona law. The argument is unavailing. While it is true that AZ POST-certified tribal police officers are authorized to exercise "all law enforcement powers of peace officers in [Arizona]," A.R.S. § 13-3874(A), nothing in the Contract requires or even permits GRIC police officers to enforce state law. The certification requirement appears to be no more than a training

requirement, imposed to ensure than all tribal officers are sufficiently qualified to meet the demands of their positions. The above interpretation is further bolstered by the express purpose of the Contract, which is to provide for the enforcement of federal and tribal law on the Gila River Indian Reservation. Because the officers were not acting in accordance with that purpose when they pursued Sanford for a violation of state law outside the Gila River Indian Reservation, Congress' extension of FTCA coverage to tribal employees acting pursuant to an ISDEAA contract provides no basis for jurisdiction in this case.[1]

### B.   Officer Tanakeyowma's Special Law Enforcement Commission

Plaintiffs maintain, in the alternative, that FTCA coverage extends to Sergeant Tanakeyowma by virtue of the Special Law Enforcement Commission ("SLEC") he was carrying. The Secretary of the Interior, and therefore the BIA, is authorized to issue SLECs to tribal officers pursuant to the Indian Law Enforcement Reform Act of 1990 ("ILERA"), 25 U.S.C. §§ 2801-2809, which provides, in part:

> The Secretary may enter into an agreement for the use . . . of the personnel or facilities of a Federal, tribal, State, or other government agency to aid in the enforcement or carrying out in Indian country of a law of either the United States or an Indian tribe that has authorized the Secretary to enforce tribal laws. The Secretary may authorize a law enforcement officer of such an agency to perform any activity the Secretary may authorize under [25 U.S.C. § 2803].

*Id.* § 2804(a); *see also Hebert v. United States*, 438 F.3d 483, 484 (5th Cir. 2006). SLECs are typically governed by deputation agreements. *See id.* Tribal officers who receive SLECs are cross-deputized as BIA law enforcement officers. *Id.*

Absent evidence to the contrary, the assumption is that tribal officers carrying SLECs are deemed federal employees for purposes of the FTCA only to the extent they

---

[1] In their briefs, Plaintiffs emphasize that the State of Arizona claims immunity from suit for the actions of tribal officers who are AZ POST-certified. *See* A.R.S. § 13-3874(B). That the State claims immunity does not require the United States or even the tribe to waive immunity. It is for each governmental organization to decide whether or not to waive immunity.

- 9 -

1  act within the scope of authority granted to them under the SLEC.  Therefore, the scope
2  of SLEC authority must be determined.  A sensible place to begin is the language of the
3  ILERA, which authorizes the BIA to issue SLECs to tribal officers "to aid in the
4  enforcement or carrying out in Indian country of a law of either the United States or an
5  Indian tribe . . . ."  25 U.S.C. § 2804(a).  The statute itself appears to confine SLEC
6  authority to the enforcement of federal and tribal law.  A notice issued by the BIA in 2004
7  bolsters that conclusion.  It states, "SLECs support the sovereignty of tribes by allowing
8  tribal law enforcement officers to enforce Federal law, to investigate Federal crimes, and
9  to protect the rights of people in Indian country . . . ."  Notice, 69 Fed. Reg. 6321 (Feb.
10 10, 2004).  It further explains that tribal officers carrying SLECs are "fully qualified to
11 enforce Federal law and to perform functions which would otherwise be performed by
12 BIA officers . . . ."  Notice, 69 Fed. Reg. 6321 (Feb. 10, 2004); *see also Cabazon Band of*
13 *Mission Indians v. Smith*, 388 F.3d 691, 695 (9th Cir. 2004) (citing 69 Fed. Reg. 6321 and
14 discussing the scope of SLEC authority).

15    Here, Sergeant Tanakeyowma was not enforcing federal or tribal law at the time of
16 the incident.  He pursued Sanford outside the boundaries of the Gila River Indian
17 Reservation after he observed Sanford's erratic driving, which, as explained above, was
18 no more than a violation of Arizona law.  There is no evidence that Sergeant
19 Tanakeyowma's SLEC authorized him to enforce Arizona law, on or off Indian lands,
20 and therefore no indication that he is deemed a federal employee for purposes of the
21 FTCA while enforcing Arizona law.  *See Hebert*, 438 F.3d at 487 (because tribal officers
22 were not enforcing federal law, they were not acting "in accordance with any special
23 commission to assist the Bureau of Indian Affairs with providing law enforcement
24 services").

25    Plaintiffs point out, however, that pursuant to 25 U.S.C. § 2804(a), the BIA may
26 authorize tribal officers to perform any activity authorized under 25 U.S.C. § 2803.
27 Under section 2803, the Secretary "may" authorize BIA employees to assist "any Federal,
28 tribal, State, or local law enforcement agency" in the enforcement of that agency's laws

- 10 -

or regulations "when requested." *Id.* § 2803(8). The argument lacks merit. First, there is no evidence that Sergeant Tanakeyowma's SLEC did in fact authorize him to assist a state agency in the enforcement of state law. Second, there is no evidence that any agency requested his assistance in apprehending Sanford. Therefore, Sergeant Tanakeyowma's SLEC provides no basis for subjecting the United States to suit here.

The Court has considered Plaintiffs' other contentions and finds them unavailing. Therefore, the claims must be dismissed.

IT IS THEREFORE ORDERED that the United States' Motion to Dismiss (Doc. 19) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action for lack of subject matter jurisdiction. The Clerk shall terminate this action.

DATED this 26th day of August, 2010.

_____
Neil V. Wake
United States District Judge